FILED
2010 Nov-17  PM 04:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION

| | |
|---|---|
| **DEVORIA MURRAY,** ) | |
| ) | |
| **Plainitff,** ) | |
| ) | **CIVIL ACTION NO.:** |
| ) | **2:09-CV-1796-VEH** |
| v.   ) | |
| ) | |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## **MEMORANDUM OPINION**

The plaintiff, Devoria Murray ("Ms. Murray") brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for a period of disability, disability insurance benefits (hereinafter "DIB"), and supplemental security income (hereinafter "SSI").[1]

Plaintiff timely pursued and exhausted her administrative remedies available

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks SSI or Disability Insurance Benefits under the Social Security Act. However, separate, parallel statutes and regulations exist for SSI and DIB claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

before the Commissioner.  Accordingly, this case is now ripe for judicial review under 205(g) of the Act, 42 U.S.C. § 405(g).[2]

## Factual and Procedural History

Ms. Murray was 46 years of age at the time of her hearing in front of the administrative law judge (hereinafter "ALJ"). She has her GED and has past relevant work experience as a patient care assistant and certified nursing assistant. (Tr. 21). This past relevant work was semiskilled but did not provide her with any transferable skills. (Tr. 31).

Ms. Murray has the "severe" impairments of obesity and lower back pain secondary to a bulging disc at L4-5 and herniated disc at L5-S1, as determined by the ALJ (Tr. 30), which limits her to light work with a sit stand option; occasional bending or stooping; no climbing; no pushing or pulling of her left lower extremity; no driving and no unrestricted heights. (Tr. 31). She has also been diagnosed with insomnia (Tr. 398); chronic pain syndrome with increased tone noted in the lumbar paraspinals with corresponding diffuse tenderness (Tr. 345); and adjustment disorder with depressive mood as well as avoidant personality and dependent personality disorders. (Tr. 357).

---

[2] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

Ms. Murray claims that her back has kept her from doing normal activities for over five years – after she injured it while working. (Tr. 21). Ms. Murray testified that her pain level with medication is a seven at its lowest, while it is "ten, nine or ten" out of ten at its highest intensity. (Tr. 429). For the pain, Ms. Murray has been prescribed Neurontin 300mg (for nerve damage), Lortab 7.5mg (for chronic pain), Robaxin 500mg (as a muscle relaxer), Flexeril 10mg (as a muscle relaxer), Ultram 50 mg (for chronic pain), and Tramadol 50mg (for chronic pain). (Tr. 160). Ms. Murray also has received 6 epidural blocks for the pain (Tr. 404), but testified that they only were successful in relieving her pain for "no more than a week" each time. (Tr. 430). For her insomnia, Ms. Murray has been prescribed Elavil 50mg as a sleep aid.

Ms. Murray states that she spends much of her day trying to manage her pain. (Tr. 431). In addition to taking the aforementioned medications 3-4 times a day, she also daily uses over-the-counter remedies like Epsom Salt baths, Icy Hot patches, a massager, heating pads, and Bengay. (Tr. 160).

Ms. Murray filed her application for DIB and SSI benefits on October 31, 2005. (Tr. 18). These claims were denied by the Commissioner on April 5, 2006. *Id*. Ms. Murray filed a written request for hearing by an ALJ on April 24, 2006. (Tr. 51). The hearing was held on November 7, 2007. (Tr. 48). The ALJ

subsequently denied Ms. Murray's application on October 23, 2008. (Tr. 32). Through counsel, Ms. Murray filed a written request for review of the ALJ decision on October 31, 2008 (received by the Social Security Administration on November 3, 2008). (Tr. 14). In a letter dated July 8, 2009 the Appeals Council notified Ms. Murray that they had denied her request for review. (Tr. 4).

Ms. Murray filed a Complaint with this court on September 4, 2009, which asks for a judicial review of the ALJ's decision. (Doc. 1). This court has carefully considered the record and, for the reasons stated below, reverses and remands the decision of the ALJ.

## Standard of Review

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end, this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Id*. Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*.

## Statutory and Regulatory Framework

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled as that term is defined by the Social Security Act and the Regulations promulgated thereunder.  The Regulations define disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. . . ." 20 CFR 404.1505(a).  For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological  abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 20 CFR 404.1508.

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 CFR 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

> (1) whether the claimant is currently employed;
> (2) whether [she] has a severe impairment;
> (3) whether [her] impairment meets or equals one listed by
> the Secretary;
> (4) whether the claimant can perform [her] past work; and
> (5) whether the claimant is capable of performing any work
> in the national economy.

5

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999); *accord, McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

"Once the claimant has satisfied steps one and two, [she] will automatically be found disabled if [she] suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform [her] past work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope* at 477; *accord, Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner also bears the burden of showing that such work exists in the national economy in significant numbers. *Id.*

### Findings of the Administrative Law Judge (ALJ)

The ALJ found that Ms. Murray has not engaged in substantial gainful activity since the amended alleged onset of her disability of June 23, 2005.[3] (Tr. 21). Additionally, the ALJ found that Ms. Murray has the severe impairments of obesity; and lower back pain secondary to a bulging disc at L4-5 and a herniated disc at L5-S1. The ALJ also found that Ms. Murray's "depression is so mild that it imposes no significant restriction of her daily activities; no significant limitation of her ability to maintain social functioning; no significant limitation of her ability to

---

[3] At her hearing in front of the ALJ, Ms. Murray amended this onset date from October 31, 2000, to June 23, 2005. (Tr. 18).

maintain concentration, persistence, or pace; and no extended duration episodes of decompensation in work settings, and, therefore, is an impairment which is 'not severe.'" (Tr. 27).

The ALJ also found that Ms. Murray's impairments, when considered singularly or in combination, do not meet or medically equal a listing in the Listing of Impairments found in 20 C.F.R. Part 404 Appendix 1, Subpart P, of the Social Security Regulations. (Tr. 27).

The ALJ further found that Ms. Murray was unable to perform her past relevant work as a patient care assistant and certified nursing assistant. (Tr. 29). The ALJ determined that Ms. Murray's physical residual functional capacity (hereinafter "RFC") allows for her to perform "light work[4] which allows a sit/stand option; occasional bending or stooping; no climbing; no pushing or pulling of her left lower extremity." (Tr. 28). The vocational expert (hereinafter "VE") characterized Ms. Murray's past relevant work as heavy and semi-skilled with no

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R § 416.967(b).

transferable skills. Since the claimant is restricted to light work, she is unable to perform her past work. (Tr. 29).

The VE (Mr. Claude Peacock), after being informed of Ms. Murray's age, education, work experience, and assigned residual functional capacity, testified that she could perform light and sedentary jobs. (Tr. 29). As examples of light jobs, he listed "light table hand, 124 of which exist in North Central Alabama; line packer, 170 of which exist in North Central Alabama; and bagger, 144 of which exist in North Central Alabama." *Id*. Consequently, the ALJ concluded that Ms. Murray has not been disabled at any time since the alleged onset date and therefore found that her application for DIB and SSI was due to be denied. (Tr. 29- 30).

## **Analysis**

The court can reverse a finding of the Secretary if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[5]

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

Ms. Murray asserts that the ALJ's decision is not supported by substantial evidence and that the position of the Commissioner is not substantially justified. Pl.'s Br. at 1. This court finds that the ALJ should have considered the effect of Ms. Murray's diagnosis of insomnia, allegedly resulting in 2-3 hours of interrupted sleep per night, in determining Ms. Murray's RFC. This court agrees with Ms. Murray that the ALJ has committed reversible error in this case.[6]

### I. The position of the ALJ is not supported by substantial evidence in regards to the RFC assigned to Ms. Murray.

The ALJ must "take into account and evaluate the record as a whole." *McCruter v.Bowens* 791 F2d. 1544, 1548 (11th Cir. 1986). "It is not enough to discover a piece of evidence which supports the decision but to disregard other contrary evidence." *Id.* In this case, the ALJ's opinion is deficient in this respect for two main reasons.

First, in determining Ms. Murray's RFC, the ALJ did not discuss the diagnosis of insomnia given by Ms. Murray's treating physician, Dr. Robert Record. (Tr. 398). The ALJ may not arbitrarily reject uncontroverted evidence. *Walden v. Schweiker*, 672 F.2d 835, 839 (11th Cir. 1982). The ALJ failed to offer any reason for not considering the diagnosis in his assessment of Ms. Murray's RFC. He also failed to give an adequate reason for significantly downplaying Ms.

---

[6] As a result, the court will not discuss the merits of other issues presented on appeal.

Murray's reports of sleepiness during the day (possibly related to her medications). The only mention of Ms. Murray's sleep deficiency in the ALJ's decision is when he says that, "[Ms. Murray] stated that medications cause her to be sleepy. She stated that she is sleepy all day because she takes medications all day." (Tr. 22). The ALJ did not consider Ms. Murray's reports of sleepiness during the day in conjunction with a diagnosis of insomnia resulting in an average of 2-3 hours of interrupted sleep per night. (Tr. 432). Ms. Murray's claims of drowsy days and sleepless nights are consistent with the medical evidence of a diagnosis of insomnia and a prescribed sleeping medication.

The Commissioner claims, in response, that the evidence of record failed to show any sleep problems that resulted in limitations greater than what the ALJ assessed. Comm'r's Br. at 8. Yet, this simply does not address the fact that the ALJ failed to discuss the diagnosis of insomnia, and corresponding limitations, in determining Ms. Murray's RFC. Consequently, this court finds that the ALJ neglected to assess limitations resulting from Ms. Murray's diagnosis of insomnia both in their own right and in conjunction with Ms. Murray's other established limitations. In *Dusterhoft v. Astrue*, 5:07-CV-466-OC-10GRJ, 2009 WL 800141, at *7 (M.D. Fla. Mar. 25, 2009), the court found that the ALJ's mental RFC was not supported by substantial evidence when the ALJ failed to consider or discuss all of

the medical opinions suggesting that the claimant had other impairments. Reversing the ALJ's decision, the court stated, "the ALJ did not discuss any of these other limitations, nor did he discuss what impact they would have on Plaintiff's ability to perform . . . work."

The ALJ failed to discuss what impact sleep deprivation secondary to insomnia has on Ms. Murray's ability to perform work. The possibility of sleep deprivation separate from, yet in conjunction with, Ms. Murray's physical ailments was never considered. Because the ALJ did not perform such assessment, his decision is due to be reversed.

**II. The hypothetical question to the VE was improper.**

Second, the ALJ posed an improper hypothetical question to the VE regarding Ms. Murray's RFC. The ALJ failed to include Ms. Murray's diagnosis of insomnia and her reports of sleep deprivation in his hypothetical question to the VE. In order for the ALJ to be able to properly rely on the VE's testimony, he must pose a correct hypothetical question to the VE about the plaintiff's impairments. That is to say, in order for the vocational expert's testimony to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). If the ALJ's hypothetical questions to the VE do not contain all of the

claimant's impairments, the VE's opinions are not supported by substantial evidence. *Banks v. Astrue*, 7:08-CV-395-VEH (N.D. Ala. Oct. 21, 2008).

In considering the VE's opinion as to Ms. Murray's RFC, the ALJ asked the VE:

> Assuming that I find from the evidence that we have a younger individual, with a . . . GED . . . who can perform, let's say medium work except for the following limitations: she's restricted to occasional bending, stooping, let's say no climbing, no push or pull movements of the upper extremities, say no unrestricted heights, no driving, no push or pull involving her left lower extremity, she should work in a temperature controlled environment, and for purposes of the hypothetical, we'll say that her pain and/or depression are mild to moderate. Mr. Peacock, with those limitations, in your opinion, would there be any medium work activities that you believe Ms. Murray could perform as I've described, sir?

(Tr. 456).

The VE responded that such person could not perform medium work activities, as had been suggested, but that such person could perform several options in the light work category. However, the ALJ's question failed to contain any mention of Ms. Murray's diagnosis of insomnia or her reports of drowsiness during the day. Because the hypothetical question to the VE did not contain this restriction on Ms. Murray's ability to function and perform work, the ALJ cannot properly rely on the VE's testimony concerning Ms. Murray's RFC. Further, as a result of not being able to properly rely on the testimony elicited from the VE, the ALJ's decision is not supported by substantial evidence.

**Conclusion**

Based on the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the ALJ's final decision was not supported by substantial evidence. More specifically, the ALJ erred in failing to consider the limitations presented by the plaintiff's medical records both when determining Ms. Murray's RFC and when relying on the testimony of the VE due to an improper hypothetical question. Accordingly, the decision of the Commissioner is due to be reversed and remanded for development of the record and further proceedings to include updated medical evidence and a reevaluation of RFC. A separate order in accordance with this memorandum opinion will be entered.

**DONE** and **ORDERED** this the 17th day of November, 2010.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge